THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| SEAN NEWBOLD; LEXIE FRIESEN; and JARED LEAMAN,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHEQUITY, INC.,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:24-cv-00103-DAK-JCB<br><br>District Judge Dale A. Kimball<br><br>Magistrate Judge Jared C. Bennett |

District Judge Dale A. Kimball referred this case to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Defendant HealthEquity Inc.'s ("HQY") motion for attorney's fees.[2] The court has carefully reviewed the parties' written memoranda. Under DUCivR 7-1(g), the court concludes that oral argument is unnecessary and decides the motion on the written memoranda. As shown below, the court grants HQY's motion.

### BACKGROUND

Among other claims, Plaintiffs Sean Newbold, Lexie Friesen, and Jared Leaman (collectively, "Plaintiffs") seek monetary damages due to HQY's alleged violation of the Family and Medical Leave Act of 1993 ("FMLA").[3] Plaintiffs filed this case in the Eastern District of

---

[1] ECF No. 62.

[2] ECF No. 110.

[3] ECF No. 80.

Wisconsin in 2023,[4] but it did not remain there long. District Judge Brett H. Ludwig ("Judge Ludwig") transferred the action to this court in an order that clearly expressed his frustration that this action was filed there to begin with.[5] Specifically, Judge Ludwig questioned whether Plaintiffs' counsel had violated Fed. R. Civ. P. 11 by filing in bad faith, especially where she admitted to choosing the Eastern District of Wisconsin because (1) Seventh Circuit caselaw appeared friendlier to Plaintiff Jared Leaman's ("Mr. Leaman") claims and, (2) because defense counsel's firm did not have an office in Chicago, and it would increase costs to Defendants if she filed outside Utah.[6]

Following the Eastern District of Wisconsin's transfer of this case to the District of Utah,[7] this court entered an Order to Propose Schedule ("OPS").[8] After District Judge Dale A. Kimball ("Judge Kimball") denied HQY's motion to dismiss,[9] HQY filed an Answer to Plaintiffs' Amended Complaint.[10] Under the OPS, Plaintiffs were required to propose a schedule to HQY in the form of a draft Attorney Planning Meeting Report ("APMR") by March 13, 2025, and the parties were instructed to conduct their Attorney Planning Meeting Conference under Fed. R. Civ. P. 26(f) within 14 days of HQY's receipt of Plaintiffs' APMR.[11] According to email

---

[4] ECF No. 1.
[5] ECF No. 59.
[6] *Id.* at 4. *See also* ECF No. 39-1 at 7.
[7] ECF No. 60.
[8] ECF No. 63.
[9] ECF No. 98
[10] ECF No. 101.
[11] ECF No. 63 at 1.

exchanges between the parties, before HQY filed its Answer, Plaintiffs' counsel indicated she desired to "get going on creating a schedule for discovery."[12]

Counsel did not follow this encouraging statement with meaningful action. Plaintiffs neither provided HQY with an APMR by the court-ordered deadline nor filed a motion to extend that deadline.[13] Instead, on March 4, 2025, Plaintiffs filed an Expedited Motion for Leave to File Reply to HQY's Answer, seeking leave to file a Motion for More Definite Statement concerning HQY's Answer.[14] There, Plaintiffs argued that HQY's Answer was ambiguous as to whether anyone had informed Mr. Leaman of his right to take FLMA leave and that HQY should be required to clarify its Answer because the Answer is "a key piece of evidence."[15] Unfortunately, Mr. Leaman had been diagnosed with stage four liver cancer and, for this reason, his counsel sought to "resolve his claim first."[16] Therefore, Plaintiffs argued that filing a Motion for a More Definite Statement in Reply to HQY's Answer was "the most appropriate given the circumstances and would expedite the resolution of Mr. Leaman's case."[17] In response to HQY's offer to "move forward with discovery and to engage . . . under the rules,"[18] Plaintiffs' counsel

---

[12] ECF No. 110-1 at 6.

[13] ECF No. 110 at 3.

[14] ECF No. 103.

[15] *Id.* at 6.

[16] *Id.* at 2.

[17] *Id.*

[18] ECF No. 110-1 at 6.

replied that Plaintiffs had "no interest in commencing discovery" until the alleged ambiguities in HQY's Answer were resolved.[19]

Plaintiffs then filed three motions in rapid succession: (1) a Motion to Stay this action pending the court's ruling on their Motion for Leave to File Reply to HQY's Answer,[20] (2) a Motion for Extension of Time to File a Pretrial Motion—seeking an extension of time to file a Motion to Strike HQY's Answer;[21] and (3) a Motion for Extension of Time to Conduct the Attorney Planning Meeting Conference.[22] In the Motion for Extension of Time to Conduct the Attorney Planning Meeting Conference, Plaintiffs asserted that the parties "cannot reasonably develop a discovery plan until after the pending motions regarding Mr. Leaman are resolved."[23]

In response, HQY filed a motion for scheduling conference.[24] HQY also filed the instant motion for fees.[25]

Five days later, Plaintiffs upped the ante by filing yet another motion: a Motion for Preliminary Injunction. Instead of seeking an injunction that was tied to the final remedy Plaintiffs sought in this action, Plaintiffs' injunction motion sought to "enjoin" HQY "from taking any further action until it addresses whether anyone from [HQY] informed [Mr. Leaman]

---

[19] *Id.* at 5.
[20] ECF No. 104.
[21] ECF No. 105.
[22] ECF No. 106.
[23] *Id.* at 1.
[24] ECF No. 109.
[25] ECF No. 110.

of his rights under FMLA."[26] In other words, Plaintiffs sought to stay litigation until HQY answered a fact-based question that easily could have been asked in discovery, which Plaintiffs' counsel had so far refused to schedule.

      The following day, the court held a status conference with the parties to clarify Plaintiffs' various requests and determine an efficient disposition of the issues raised.[27] There, the court likened Plaintiffs' filing of five motions in two weeks to a "feeding frenzy" and indicated that, although Plaintiffs claimed to seek an expedited resolution as to Mr. Leaman's claims with their flurry of motions, they had actually brought this case to a halt.[28] Consequently, the court set a scheduling conference with the parties for the following day in hopes of breaking through the scheduling log jam by mediating the parties' Rule 26(f) conference and entering a scheduling order at least as to Mr. Leaman's claims.[29]

      At that scheduling conference, Plaintiffs' counsel stated she could not set a schedule at that time and would not until the court issued a ruling on the preliminary injunction motion as to Mr. Leaman.[30] Therefore, the court found good cause under Fed. R. Civ. P. 16(b)(2) to delay entry of a scheduling order pending a ruling on Plaintiffs' Motion for Preliminary Injunction.[31] The very same day, Judge Kimball denied Plaintiffs' Expedited Motion for Leave to File Reply

---

[26] ECF No. 114 at 1.

[27] ECF No. 118.

[28] *Id.*

[29] *Id.*

[30] ECF No. 121.

[31] *Id.*

to HQY's Answer, found as moot Plaintiffs' Motion to Stay, and denied Plaintiffs' Motion for Preliminary Injunction.[32] Judge Kimball noted:

> The court is at a loss as to why Plaintiffs will not agree to a scheduling order that provides for expedited discovery. Both the Motion for Leave to Reply to Answer and the Motion for Preliminary Injunction seek an answer to traditional discovery requests. If Plaintiffs would simply agree to begin the discovery process, Plaintiffs could propound requests for admission and interrogatories seeking an answer to the question. Plaintiffs' request to have Defendant's Answer provide the answer to the question is unnecessary because Plaintiffs can obtain the same information in simple discovery requests. Plaintiffs' Motion for Preliminary Injunction seeks the same answer that would traditionally be an answer to a request for admission or interrogatory. The parties simply need to proceed to conducting discovery.[33]

Thereafter, the court made itself available for an additional scheduling conference with the parties.[34] However, the parties reached an agreement regarding an expedited scheduling order governing claims asserted by Mr. Leaman only.[35]

## ANALYSIS

Based on the procedural history outlined above, the court concludes that HQY is entitled to an award of reasonable expenses against Plaintiffs' counsel under Fed. R. Civ. P. 37(f) for Plaintiffs' counsel's failure to comply with her obligations under Rule 26(f), the OPS, and the unwarranted motion practice caused by this failure. Under Rule 37(f), if a party or its attorney fails to participate in good faith in developing and submitting a proposed discovery plan as

---

[32] ECF No. 124.

[33] *Id.* at 2.

[34] ECF No. 125.

[35] ECF No. 128; ECF No. 131.

required by Rule 26(f), the court may require that attorney to pay to any other party the reasonable expenses and attorney's fees, caused by the failure.[36]

Plaintiffs' counsel repeatedly refused to participate in a Rule 26(f) conference with HQY's counsel and, instead, filed what Judge Kimball called a "barrage of meritless motions [] not serving Plaintiffs' interests in expediting the litigation."[37] Indeed, as both the undersigned and Judge Kimball recognized, both the Motion for Leave to File Reply to Answer and the Motion for Preliminary Injunction sought an answer to traditional discovery requests (i.e., whether anyone from HQY informed Mr. Leaman of his rights under the FMLA) while simultaneously serving as an excuse to not even schedule discovery much less engage in it. As Judge Kimball astutely noted:

> If Plaintiffs would simply agree to begin the discovery process, Plaintiffs could propound requests for admission and interrogatories seeking an answer to the question. Plaintiffs' request to have Defendant's Answer provide the answer to the question is unnecessary because Plaintiffs can obtain the same information in simple discovery requests. Plaintiffs' Motion for Preliminary Injunction seeks the same answer that would traditionally be an answer to a request for admission or interrogatory. The parties simply need to proceed to conducting discovery.[38]

The court appreciates the seriousness of Mr. Leaman's medical condition and Plaintiffs' counsel's desire to zealously advocate for her seriously ill client. However, given the history of this case from its inception, Plaintiffs' counsel cannot credibly argue that she intended to hasten the resolution of Mr. Leaman's claims where, among other things, counsel: (1) filed this action in

---

[36] Fed. R. Civ. P. 37(f).

[37] ECF No. 124 at 2.

[38] *Id.*

a district with nothing to do with the claims, which rightfully garnered Judge Ludwig's ire in Wisconsin;[39] (2) refused to set a discovery schedule in this court when ordered to do so; (3) filed motions that sought to delay discovery while asking the court to order HQY to produce answers that would have been obtained had counsel engaged in discovery; and (4) filed a motion for preliminary injunctive relief that read like a discovery request and was quickly denied after it was filed, garnering more judicial ire from Judge Kimball in this District.[40] This abridged case-

---

[39] *See, e.g.*, ECF No. 59 at 4 ("This is blatant forum shopping and arguably bad faith conduct that violated Federal Rule of Civil Procedure 11. Counsel who signs a pleading certifies that she is filing it in good faith and not for an improper purpose. Choosing to file in a jurisdiction that has limited connections to a dispute to burden an opponent and opposing counsel is not a proper purpose.").

[40] Besides seeking to obtain discovery through the motion for preliminary injunction, Plaintiff's counsel stated during the hearings with this court on March 25, 2025 and March 26, 2025 that among the reasons for seeking the preliminary injunction hearing was to force a quick trial on the merits under Fed. R. Civ. P. 65(a)(2), which allows that practice under certain circumstances. But counsel's articulated desire to skip discovery and get to a quick trial on the merits through a preliminary injunction hearing is questionable given that "[i]n an action for monetary damages, the district court does not have the power to issue a preliminary injunction." *See, e.g.*, *Fort Defiance Indian Hosp. Bd. v. Becerra*, 604 F. Supp. 3d 1187, 1221 (D.N.M. May 26, 2002); *see also Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) ("It is also well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages."). The first paragraph of Plaintiffs' operative complaint states: "This is an action for monetary damages due to [HQY] violating [Plaintiffs'] rights . . . ." ECF No. 80, ¶ 1. Although Plaintiffs' complaint later states that it is seeking equitable relief, it does so only for "front pay," which is monetary relief. ECF No. 80, ¶ 215. Given that Plaintiffs' action was for "monetary damages," their motion for injunctive relief was not even plausible. Additionally, injunctive relief is only available when other legal remedies are not. *See, e.g.*, *Northern Cal. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1306 (1984) ("A party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law."). As Judge Kimball pointed out, the injunctive relief Plaintiffs requested (i.e., what HQY disclosed to employees under the FMLA) was remediable through Rules 26-37 of the Federal Rules of Civil Procedure, which made injunctive relief both unnecessary and unavailable. Accordingly, discovery would have provided the very answers that Plaintiffs' counsel sought to uncover through a preliminary injunction motion that had no hope of success given the nature of relief sought in this case. This further demonstrates that the motion for preliminary injunction was yet another move to avoid counsel's duties under Rule 26(f).

history shows that counsel's actions causing repeated delays speak much louder than words purporting to pursue a speedy resolution of Mr. Leaman's claims.

Nevertheless, despite this history and prior judicial findings, Plaintiff's counsel claims that this court has justified her delay by finding "good cause" for postponing its previous order requiring the parties to engage in a Rule 26(f) conference and to propose a scheduling order. This argument is not well taken because it ignores the temporal and procedural context of the court's "good cause" finding. Only after Plaintiff's counsel filed the numerous motions detailed above—all the while refusing to set a discovery schedule despite a court order to do so—the court offered to mediate a Rule 26(f) conference to get Mr. Leaman's claims on track. HQY was willing to participate, but, again, Plaintiffs' counsel was not willing to set a schedule while the preliminary injunction motion was pending before Judge Kimball. Accordingly, because Plaintiffs' counsel had filed that motion and was not willing to negotiate a schedule at that time, the court found there was "good cause" under Fed. R. Civ. P. 16(b)(2) to delay the entry of a scheduling order until Judge Kimball disposed of the motion for preliminary injunction.[41] This court's finding of "good cause" at that time can neither be reasonably construed as a *nunc pro tunc* pardon of counsel's previous violations of this court's unambiguous scheduling order nor as a grant of clemency for counsel's motions that claimed to move the case forward while keeping it dead in its tracks. Therefore, Plaintiffs' counsel has not participated in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f).[42]

---

[41] ECF No. 121.

[42] To be clear, the court is not relying on the statements from Judge Ludwig in the Eastern District of Wisconsin to hold Plaintiffs' counsel accountable under Fed. R. Civ. P. 37(f) because

By failing to participate in proposing a discovery plan despite obligations to do so under the Federal Rules of Civil Procedure and court order, Plaintiffs' counsel has caused HQY to needlessly spend time and, consequently, money, seeking to finally commence discovery in a case that is now almost two years old (considering its initial filing in Wisconsin in 2023). Rectifying such needless expenditure is precisely why Rule 37(f) allows the court to impose fees and expenses against the party who fails to participate in good faith in developing a discovery plan. Accordingly, the court GRANTS HQY's motion for fees[43] incurred because of this failure.

By granting HQY's motion for fees, the court in no way revels in sanctioning Plaintiffs' counsel. Indeed, imposing sanctions on a party is the part of this job that this court enjoys the least. Although the court hopes that all counsel and parties will litigate above the metaphorical floor of acceptable litigation conduct by following the rules, when counsel's conduct goes below that floor, judicial inaction gives official imprimatur to a new low that the violating party and others thereafter incorrectly believe constitutes the new floor of behavior. This court cannot and will not tacitly sponsor a behavioral race to the bottom solely to avoid the unpleasant task of sanctioning counsel. It is time to get this case moving.

---

the proceedings in the Eastern District of Wisconsin had nothing to do with this court's order to create a case schedule. However, before the Eastern District of Wisconsin, Plaintiffs' counsel manifested her intention to weaponize the federal civil litigation system against HQY instead of using the system to "secure the just, speedy, and inexpensive determination of" this action. Fed. R. Civ. P. 1. *See* ECF No. 59 at 2. The proceedings in the Eastern District of Wisconsin are relevant to this court's decision under Fed. R. Civ. P. 37(f) only to demonstrate that the procedural tactics in Utah case appear to be a further manifestation of bad faith delay to needlessly run up costs and abuse a process, which, had it been properly followed, would have yielded the information from HQY that Plaintiffs' sought much more quickly than filing motions that had no chance of securing that information.

[43] ECF No. 110.

Therefore, or before June 6, 2025, HQY shall submit to Plaintiffs an affidavit and cost memorandum detailing the amount of reasonable expenses, including attorney's fees, that HQY incurred as a result of Plaintiffs' counsel's failure to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f). The parties shall then have 14 days thereafter to attempt to stipulate to the amount of the award. If the parties can agree upon the amount, Plaintiffs' counsel shall pay the stipulated expenses award to HQY within 14 days thereafter. If the parties are unable to agree on the amount, HQY shall promptly file their affidavit and cost memorandum with the court. Plaintiffs' counsel will be provided with 7 days thereafter to file any response. Upon receipt of any such submissions, the court will determine the amount of the expenses award.

IT IS SO ORDERED.

DATED this 23rd day of May 2025.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge